AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: Drew Davis 6/24/2026

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

In the matter of the search of information associated with the cellular device assigned call number (323) 694-1350 that is stored at premises controlled by T-Mobile US, Inc. Corporation

)
)
)
)
)
)
)

Case No.  M-26-321 -CMS

**FILED**

1:46 pm, Jun 25, 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA
By: AC, Deputy Clerk

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ New Jersey _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:

See affidavit of DEA TFO Gregory E. Hunt.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Gregory E. Hunt, TFO, DEA

*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 25, 2026

*Judge's signature*

City and state:  Oklahoma City, Oklahoma

CHRIS M. STEPHENS, U.S. Magistrate Judge

*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE
SEARCH OF INFORMATION
ASSOCIATED WITH THE
CELLULAR DEVICE ASSIGNED
CALL NUMBER (323) 694-1350,
THAT IS STORED AT
PREMISES CONTROLLED BY
T-Mobile US, Inc.

Case No. MJ-26-321    -CMS

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Gregory E. Hunt, a Task Force Officer (TFO) of the Drug Enforcement
Administration (DEA), being first duly sworn, hereby depose and state as
follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this Affidavit in support of an application for a search
warrant for information associated with a certain cellular telephone assigned
call number **(323) 694-1350**, ("the **SUBJECT PHONE**"), that is stored at
premises controlled by T-Mobile US, Inc. ("T-Mobile"), a wireless telephone
service provider located at 4 Sylvan Way, Parsippany, New Jersey 07054. The
information to be searched is described in the following paragraphs and in
**Attachment A**. This Affidavit is made in support of an application for a search
warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the
government copies of the information further described in **Section I of**

**Attachment B**. Upon receipt of the information described in **Section I of Attachment B**, government-authorized persons will review the information to locate items described in **Section II of Attachment B**.

2. I am a Task Force Officer (TFO) of the Drug Enforcement Administration (DEA), United States Department of Justice. As a TFO, I am an investigative law enforcement officer of the United States of America within the meaning of 18 U.S.C. § 2516 and 21 U.S.C. § 878, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, federal offenses. As a TFO, I am a sworn Police Officer under Okla. Stat., tit. 21, § 99.

3. Since becoming a TFO, I have conducted multiple investigations targeting drug trafficking organizations, some of which involved the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. I have experience in the methods used in drug trafficking investigations, including but not limited to, debriefing cooperating witnesses and cooperating sources, the preparation and execution of search warrants, and making arrests. In light of this experience, I know the following:

   a. I am aware of the methods in which drug couriers and distributors associated with Drug Trafficking Organizations (DTOs) often use electronic devices, including computers, tablets, cell phones, and other electronic storage devices, to communicate and coordinate drug transactions and execute electronic transactions which can, in turn, create automatic records and documentation of the drug transactions;

2

b.   I am aware that it is particularly common for individuals engaged in the sale and distribution of illegal drugs to use electronic devices to track and document financial transactions;

c.   I am aware that individuals engaged in the sale and distribution of illegal drugs will frequently keep contact information and other evidence of their financial and drug dealings with DTOs on cellular phones, computers, tablets, and other storage devices that they often keep on or near their person;

d.   I am also aware that individuals engaged in the sale and distribution of illegal drugs will often use cellular phones to further their financial businesses using digital communication, including, but not limited to, e-mail and instant messaging;

e.   I am aware that individuals involved in transporting illegal drugs will often use electronic devices to communicate with the individuals for whom they are transporting the drugs, including coordinating addresses for pickups and deliveries, communicating about status of the transportation, especially over long distances, and communicating to confirm successful deliveries; and

f.   I am aware that drug traffickers commonly keep cellular phones with them while transporting drugs to ensure that they can keep other co-conspirators apprised of their location, coordinate receiving and delivering drugs and drug proceeds, and quickly communicate should anything unexpected occur.

4.   The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient

3

probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.    Based on the facts set forth in this Affidavit, there is probable cause to believe that **Carlos Martinez Lopez** and **Francisco Agramon Murrieta**, were engaged in a drug conspiracy in violation of 21 U.S.C. § 846, and possessed with intent to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1), and that evidence regarding the receipt, transportation, and distribution of controlled substances is stored at T-Mobile. Accordingly, there is probable cause to search the information described in **Attachment A** for evidence, instrumentalities, contraband, or fruits of this crime as further described in **Attachment B**.

## PROBABLE CAUSE

6.    On May 20, 2026, Oklahoma Bureau of Narcotics (OBN) Agent Brady Webb was performing traffic enforcement on eastbound lanes of Interstate 40 (I-40), in Canadian County, Oklahoma, within the Western District of Oklahoma.

7.    At about 10:10 p.m., Agent Webb observed a white Dodge Ram 3500 truck pulling a horse trailer traveling eastbound on I-40. The trailer had a California license plate bearing tag number 4WK9194. When Agent Webb observed the truck commit a traffic violation, he initiated a traffic stop.

4

8.    Agent Webb contacted the driver who was subsequently identified as **Carlos Martinez Lopez**. Agent Webb instructed **Martinez Lopez** to sit with him in his patrol vehicle so that Agent Webb could process the stop. While in the patrol vehicle, Agent Webb had a conversation with **Martinez Lopez** about his travel.

9.    When asked about his travel, **Martinez Lopez** told Agent Webb they were traveling from California to Indiana with six show horses. Agent Webb asked **Martinez Lopez** if he was the owner of the truck and **Martinez Lopez** told him the truck belonged to his cousin. **Martinez Lopez** confirmed, however, that he was the only person who had been driving the truck, and he explained that he used it to provide his services. When Agent Webb asked **Martinez Lopez** when he had last traveled through Oklahoma, **Martinez Lopez** told Webb that it was probably a month ago. Agent Webb found this odd because prior to the stop he ran the trailer tag through a License Plate Reader (LPR) system. Agent Webb found that on May 16, 2026, (four days prior to the stop) the trailer pulled by what appeared to be the same truck had traveled westbound through Oklahoma on I-40.

10.    Agent Webb then reapproached the truck to obtain the insurance and title information from the glove box. Agent Webb subsequently contacted the lone passenger and identified him as **Francisco Agramon Murrieta**. When Agent Webb asked for the insurance, he quickly surmised that

5

**Agramon Murrieta** did not speak English. Agent Webb began to ask **Agramon Murrieta** for the papers to the truck in Spanish. During this time, Agent Webb obtained **Agramon Murrieta's** identification card. When Agent Webb asked **Agramon Murrieta** where they were traveling in Spanish, **Agramon Murrieta** responded, "no se" (which I believe means, essentially, "I do not know").

11.    Agent Webb returned to his patrol vehicle and continued processing the traffic stop. Around this time, Agent Dallas Lang arrived on the scene. At one point, **Agramon Murrieta** was placed into Agent Lang's vehicle. While in Agent Lang's vehicle, **Agramon Murrieta** stated that they were heading to "Atlanta." Agent Webb asked **Agramon Murrieta** if he meant Atlanta, Georgia, to which he confirmed by nodding affirmatively.

12.    Agent Webb took his K9 partner to perform a free air search of the truck and trailer. Agent Webb's K9 partner showed a positive alert on the rear passenger side of the truck and the tac door on the side of the trailer. A probable cause search was performed on the truck and trailer. In the tac room compartment of the trailer, Agent Webb found four plastic tubs and two tote bags in plain sight containing a total of 160 kilograms of cocaine. The substances field tested positive for the presence of cocaine, and they have since been confirmed positive for cocaine by the DEA South Central Laboratory.

6

13.    Upon field-testing positive for the presence of cocaine, the **SUBJECT PHONE** was seized from inside the truck.

14.    During the course of my investigation, I learned that the horse trailer was observed on LPR systems traveling between Indiana and California on multiple occasions throughout the month of May 2026. Based on my training and experience, I know that drug traffickers commonly engage in "hard travel" by making multiple trips, in short succession, to deliver larger quantities of narcotics to an area to maximize profits.

15.    Utilizing law enforcement databases, I was able to confirm that phone number **(323) 694-1350** (**SUBJECT PHONE**) is serviced by T-Mobile.

16.    In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone services have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a

wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

17. Based on my training and experience, I know that T-Mobile can collect cell-site data about the **SUBJECT PHONE**. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for a wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under

investigation because the information can be used to identify the **SUBJECT PHONE's** user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

19.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

20.     I further request that the Court direct T-Mobile to disclose to the government information described in **Section I of Attachment B** that is within its possession, custody, or control.  Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

GREGORY E. HUNT
Task Force Officer
Drug Enforcement
Administration

Subscribed and sworn to before me on June 25 , 2026.

CHRIS M. STEPHENS
United States Magistrate Judge
Western District of Oklahoma

9

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone:

Assigned Call Number: **(323) 694-1350**
Subscriber/Customer Name: **Juan Hernandez**
Billing Address: **14820 7th Street, Victorville, California 92395-4024**

that is stored at premises controlled by T-Mobile US, Inc., located at 4 Sylvan Way, Parsippany, New Jersey 07054.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in **Attachment A** is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in **Attachment A** for the time period **May 1, 2026, through May 21, 2026**:

a. The following information about the customers or subscribers of the Account:

i. Names (including subscriber names, user names, and screen names);

ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

1

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. Records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

iii. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **SUBJECT PHONE**, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and

2

destination telephone numbers (call detail records), email addresses, and IP addresses);

2. information regarding the cell tower and antenna face (also known as "sectors") through which the communication were sent and received; and

3. RTT records, PCMD records, NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.).

**Information to be Seized by the Government**

All information described above in **Section I** that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) involving **Carlos Martinez Lopez** and **Francisco Agramon Murrieta**, during the period **May 1, 2026, through May 21, 2026**.

Law enforcement personnel are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3